BOBBY J. and JOYCE L. WATERS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Waters v. Commissioner
Docket No. 26389-83.
United States Tax Court
T.C. Memo 1987-332; 1987 Tax Ct. Memo LEXIS 332; 53 T.C.M. (CCH) 1300; T.C.M. (RIA) 87332; July 2, 1987. *332 Held, P, a supervisor of ironworkers on the construction of a nuclear plant, was not away from home within the meaning of sec. 162(a), I.R.C. 1954. Scott McLarty and Larry E. Blount, for the petitioners. Todd K. Snyder, for the respondent. SIMPSON
MEMORANDUM FINDINGS OF FACT AND OPINION SIMPSON, Judge: The Commissioner determined a deficiency of $2,058.00 in the petitioners' Federal income tax for 1979. The only issue for decision is whether the petitioner Bobby *333 Waters was away from home within the meaning of section 162(a)(2) of the Internal Revenue Code of 1954[1] and entitled to deduct his living expenses while he was supervising the ironworkers on a project to construct a nuclear power plant. FINDINGS OF FACT Some of the facts have been stipulated, and those facts are so found. The petitioners, Bobby J. and Joyce L. Waters, husband and wife, resided in Vidalia, Georgia, at the time of the filing of their petition in this case. They filed their joint Federal income tax return for 1979 with the Director of the Internal Revenue Service, Atlanta, Georgia. Mr. Waters will sometimes be referred to as the petitioner. In 1974, Georgia Power Company (Georgia Power) commenced the construction of a nuclear power plant, known as Plant Vogtle, at Waynesboro, Georgia. Later in that year, construction was suspended because of a lack of funding. However, construction was resumed in 1977, and thereafter, there were no further funding problems. Ingalls Iron Works Company (Ingalls) was engaged to perform the *334 miscellaneous steel erection work on the Vogtle plant for Georgia Power. In July 1978, Ingalls employed the petitioner as the field superintendent for the plant, and later, he became the general superintendent. In both positions, the duties were substantially the same. From 1977 through 1980, the jobs at the plant were being "staffed up." The petitioner supervised 24 employees at the end of 1978, 59 employees at the end of 1979, and 150 employees at the end of 1980. There were 1,000 employees working at the plant at the end of 1978, 1,700 at the end of 1979, and 3,400 at the end of 1980. As a supervisor, or staff employee, the petitioner could expect to remain employed until completion of the plant. In 1978, the first unit of the plant was expected to be completed in 1984, and the second unit in 1985. When the petitioner was employed at Plant Vogtle, he had an excellent reputation as an employee. His employment would not terminate before the completion of the plant unless he failed to perform his work satisfactorily. In fact, his performance was exemplary, and he continued to work at the Vogtle plant until, at least, 1985. The petitioner and his family resided in Vidalia, *335 Georgia, throughout 1979 and until at least 1985. He had children attending school in Vidalia, and he had aged parents living there who needed the assistance of Mrs. Waters. In 1979, the petitioner lived in a motel in Waynesboro during the work week, and he returned to Vidalia each weekend. The roundtrip was approximately 182 miles. There was a period of 7 weeks in 1979 during which he did not work because of illness, but he was paid for such time. On their Federal income tax return for 1979, the petitioners reported interest income of $482.70 and claimed deductions of $775.00 for charitable contributions, $1,100.00 for interest paid, and $7,160.00 for employee business expenses of the petitioner. The employee business expenses included $1,800.00 for lodging, $2,085.00 for meals, and $3,275.00 for automobile expenses. In his notice of deficiency, the Commissioner determined that the petitioners received interest income of $945.00. He also disallowed the entire charitable contribution deduction, reduced the interest deduction to $958.00, reduced the automobile expenses to $1,567.00, and disallowed completely the deductions for meals and lodging. The petitioners conceded that *336 they received the interest income as determined by the Commissioner, and the parties have agreed that the petitioners are entitled to an interest deduction of $990.03. OPINION The petitioners have not challenged the Commissioner's disallowance of the charitable deduction, and since they have the burden of proving their right to the deduction claimed by them, they have in effect conceded that issue. Rule 142(a), Tax Court Rules of Practice and Procedure. The only issue remaining for our decision is whether the petitioners are entitled to deduct the expenses incurred by the petitioner for lodging and meals in Waynesboro and his automobile expenses for traveling between Vidalia and Waynesboro. He maintains that he was hired as a temporary employee and that therefore he is entitled to deduct his living expenses while in Waynesboro and his expenses of traveling to and from Waynesboro. The petitioners must prove their right to deduct such expenses. Daly v. Commissioner,72 T.C. 190 (1979), affd. 662 F. 2d 253 (4th Cir. 1981). Personal living expenses are ordinarily nondeductible. Sec. 262. However, section 162(a)(2) allows a taxpayer to deduct *337 certain living expenses paid or incurred while away from home in the pursuit of a trade or business. Since the amount of the living expenses incurred by the petitioner is not in dispute, the deductibility of such expenses depends upon whether he was "away from home in the pursuit of a trade or business" within the meaning of section 162(a)(2) while in Waynesboro. In Commissioner v. Flowers,326 U.S. 465 (1946), the Supreme Court held that a taxpayer could not deduct the expenses of traveling to and living at his place of employment, except when the traveling was required by the exigencies of his employment, rather than by his "personal convenience and necessities." In that case, the taxpayer's principal place of employment was Mobile, Alabama, but he continued to live in Jackson, Mississippi, and traveled to Mobile whenever his work required him to be there. The Court found that such travel was not required by the exigencies of his employment, but resulted from his personal choice to live in Jackson. Since his principal employment was in Mobile, he could reasonably have been expected to move there, and then such travel would have been unnecessary. Since the *338 Flowers decision, we have had a multitude of cases in which it was necessary to decide whether a taxpayer was traveling because of the exigencies of his employment, or whether the travel resulted from his personal choice as to a place to live. It has been difficult to develop precise guidelines, and the questions of whether the employment was temporary or indefinite and where the taxpayer's "home" was located for tax purposes have been treated as factual ones. Norwood v. Commissioner,66 T.C. 467, 470 (1976). The purpose of allowing the deduction of living expenses while a taxpayer is "away from home" is "to mitigate the burden of the taxpayer who, because of the exigencies of his trade or business, must maintain two places of abode and thereby incur additional and duplicate living expenses." Kroll v. Commissioner,49 T.C. 557, 562 (1968). In furtherance of this purpose, when a taxpayer with a principal place of employment goes elsewhere to take work which is merely temporary, he may deduct the living expenses incurred at the temporary post of duty, because it would not be reasonable to expect him to move his residence under such circumstances. *339 Michaels v. Commissioner,53 T.C. 269 (1969); Kroll v. Commissioner,supra.For this purpose, temporary employment is the type which can be expected to last for only a short period of time. Mitchell v. Commissioner,74 T.C. 578, 581 (1980); Tucker v. Commissioner,55 T.C. 783 (1971). On the other hand, if a taxpayer chooses for personal reasons to maintain a family residence far from his principal place of employment, then his additional traveling and living expenses are incurred as a result of that personal choice and are therefore not deductible. Commissioner v. Flowers,supra;Kroll v. Commissioner,supra at 561-562; Garlock v. Commissioner,34 T.C. 611, 614 (1960); Bixler v. Commissioner,5 B.T.A. 1181, 1184 (1927). Similarly, if a taxpayer accepts indefinite employment outside the vicinity in which he lives, but he does not change his family residence, the travel to his new place of employment and the additional living costs which he incurs there result, not from his employment, but from his decision not to move his residence. *340 Owens v. Commissioner,50 T.C. 577 (1968); Wills v. Commissioner,48 T.C. 308 (1967), affd. 411 F.2d 537 (9th Cir. 1969). Thus, the deductibility of traveling expenses and duplicate living expenses depends upon the ultimate question of whether the taxpayer, under all the circumstances, could reasonably have been expected to move his residence to the vicinity of his employment. The circumstances of the present case indicate clearly that in 1979, the petitioner's employment at the Vogtle plant was not temporary. He was considered a staff employee, and as such, he was not subject to the vagaries of a craft employee. He had an excellent reputation, and he performed in an exemplary manner. Craft employees might be laid off as the work on the plant ebbed and flowed, but the petitioner could expect to remain employed until the completion of the plant. In fact, he was still working at the plant in 1985. In 1978, when he was employed, and in 1979, the year before us, the petitioner could expect his employment at the Vogtle plant to continue, at least, until 1984 -- a period of employment which is surely more than temporary. Mitchell v. Commissioner,supra. *341 The petitioner claims that Ingalls considered him to be a temporary employee and paid him a living allowance of $150 a week, which he included in income. In support of his position, he relies upon the decision of the court in Frederick v. United States,603 F.2d 1292 (8th Cir. 1979). However, that case is factually distinguishable from the present case. In Frederick, the taxpayer was a carpenter employed to work on the construction of an anti-ballistic missile project. The taxpayer was in fact employed for approximately 3 years, but throughout his employment, there was no assurance that he would continue to be employed. There was considerable uncertainty as to whether the missile site would be constructed, most carpenters were laid off during the winter months, and there were many changes in the construction plans which caused some layoffs. In view of these circumstances, the circuit court concluded that the district court was not clearly erroneous in finding that the taxpayer's employment was temporary. Here, the petitioner was not subject to similar uncertainties. Although he argues that there was some doubt about the continued funding of the nuclear *342 plant, there was no evidence to support his argument, and his employment was not subject to being terminated by reason of weather conditions or modifications in the construction plans. The petitioner's reasons for leaving his family in Vidalia may have been compelling -- his desire to permit his children to continue in school there, and his concern about his parents. However, those reasons are not business reasons; they are personal and do not justify a deduction under section 162(a)(2). Consequently, we hold that the petitioner's expenses of living in Waynesboro and of traveling to and from Waynesboro are not deductible. Decision will be entered under Rule 155.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 as in effect during the year in issue.↩